IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, April 7, 2003

# CHARLES T. KIMERY v. UNICOI COUNTY INSURANCE AGENCY, et al.

**Direct Appeal from the Chancery Court for Unicoi County**
No. 6452     Hon. G. Richard Johnson, Chancellor

**FILED JUNE 2, 2003**

**No. E2002-00849-COA-R3-CV**

In a dispute over corporate ownership and management, the Trial Court awarded Judgment for compensatory and punitive damages and attorneys fees.  On appeal, we affirm the compensatory damages and attorney fees award, but reverse punitive damage award.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

M. Stanley Givens, Johnson City, Tennessee, for Appellant.

Arthur M. Fowler, Johnson City, Tennessee, for Appellees.

## OPINION

In this action plaintiff sought dissolution of a corporation and distribution of assets and named defendants Jack McKinney and Unicoi County Insurance. He claimed defendant owned 50% of the corporation, and that the directors were deadlocked and could no longer conduct business.  He further alleged that McKinney had acted illegally by misapplying and wasting corporate assets.  He further alleged that he had been locked out of the business and sought $100,000.00 in damages, and the appointment of a receiver.

The McKinneys filed an Answer, Counter-Complaint, and Third Party Complaint, alleging that the proper name of the corporation was Unicoi County Insurance and Diversified Services, Inc., and that the corporation was created by McKinney, and that McKinney was originally the sole shareholder. He further alleged that in 1992 he sold Kimery 49% of the shares of stock for $47,000.00 to be paid in installments, and that the last installment was never paid. The agreement provided that if any installments were not timely paid, the stock would be conveyed back to McKinney, and McKinney would be entitled to keep any funds paid as damages.

McKinney further alleged that Kimery took money from the corporation for his own personal use, failed to file the annual report, and charged personal expenses to the corporation, and that these actions were taken while McKinney was recuperating from a heart attack.

Thereafter, Kimery's attorney withdrew and the trial was continued to a later date. Kimery procured a new attorney, but then sent a letter to the Court on his own behalf, requesting mediation. Kimery's new attorney filed a Motion to Withdraw, which the Court allowed, and no other attorney appeared on Kimery's behalf. At some point the Court granted the Motion to Mediate and the plaintiff subsequently objected to mediation and the Court then set the case for trial on February 12, 2002.

On January 27, 2002, Kimery wrote to the court clerk, as follows:

On January 17, 2002, Mr. Arthur M. Fowler filed an Order to Mediation of our case. This past week We have received notice to withdraw at my approval, and change the date of court to an earlier date, The change in Mediation was without my approval as stated.

At this we request to keep the Mediation as we feel it would be to our better interest.

And the requested change of court date would not be good for us, due to time needed to prepare the case with legal help.

Then plaintiff wrote a letter to the Court on February 5, 2002, which made various charges about the witnesses on the McKinneys' witness list, and listed the witnesses which Kimery intended to call. At the end of the letter, Kimery stated:

We pled that it would be granted a continuance for at least sixty 60 days to prepare with our new council as he has requested to do so, this given time to prepare due to the long time taken to seek legal council;

Also at this we request to keep the Mediation as we feel it would be to our better interest if continuance not granted.

-2-

On the assigned trial date, the Court called the case and asked if Kimery was there, and he could not be located in the courthouse. The Court noted that no attorney had appeared on Kimery's behalf, and that Kimery's prior attorneys had withdrawn. The Court, upon review of the file, noted the case had been pending for two years, and that there had been problems with discovery, etc., and that Kimery had attempted to obstruct the progress of the case to trial, and that "from this voluminous file that probably weighs now in excess of two pounds, it appears that he has an aim to delay and to not meet the merits of this cause in the courtroom."

The court further expressed that the record was replete with alleged instances where Kimery had "threatened and intimidated", and that Kimery's latest request for a continuance was without merit. Since the Counter-Complaint had not been answered, the Trial Court granted counter-complainant's Motion for Default, and allowed counter-complainant to put on his proof. During the testimony, Kimery entered the courtroom, which was acknowledged by the Trial Judge. At the conclusion of hearing evidence, the Trial Court found that Kimery's claim was not well taken and dismissed it, and found that the McKinneys were entitled to a judgment against Kimery who "did wilfully and maliciously engage in harassment, outrageous conduct, conversion of assets, and damages to assets" and that the McKinneys were entitled to damages pursuant to Tenn. Code Ann. §4-21-701. The Court awarded McKinney compensatory damages of $49,862.00, and punitive damages of $20,000.00. Further, that any stock Kimery had in the corporation would be divested out of him and to McKinney.

Further, the Court ordered that the corporation would have judgment against Kimery for $59,653.00 in compensatory damages, and Brenda McKinney would have a judgment against Kimery for $20,000.00 in compensatory damages and $20,000.00 in punitive damages. The court also entered a permanent injunction against Kimery to prevent him from going about the McKinneys, the corporation, or its employees, and further ordered that Kimery pay attorney's fees for the McKinneys in the amount of $33,746.05.

Kimery has raised these issues on appeal:

1.      Whether the trial court erred in failing to grant Kimery's Motion for Continuance, or for mediation?

2.      Whether the trial court erred in granting a "default judgment" to the McKinneys?

3.      Whether the trial court erred in awarding punitive damages?

4.      Whether the trial court erred in the amount of punitive damages awarded?

5.      Whether the trial court erred in awarding attorney's fees?

Kimery argues that the Trial Court erred in failing to grant his request for a

continuance or for mediation. The Court treated Kimery's letter as a proper motion requesting a continuance, which the Court denied for the reasons stated.

We have previously held that the trial court has "broad discretion in the grant or denial of a continuance of a regularly scheduled case and his decision will not be set aside unless there is a clear showing of abuse." *Barber & McMurry, Inc. v. Top-Flite Development Corp., Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986). In this case, the Trial Court held that Kimery had shown a lack of diligence in his pursuit of getting the case to trial, and moreover, that Kimery had obstructed the progress of the matter so as to not "meet the merits" in the courtroom - the evidence supports these findings. Kimery clearly knew the trial date, and did not provide the Court with a reasonable explanation of why he could not meet that date. The case had been pending for two years, and Kimery had several months before the trial date to obtain new counsel. It was well within the discretion of the Trial Court not to grant a further continuance of the matter.

When Kimery failed to appear for the scheduled trial, the McKinneys' attorney asked for a "default" judgment, but the court did not call the judgment a default in his written order. The McKinneys proceeded to put on their proof as to liability and damages. While Kimery entered the courtroom during the trial, he did not address the Court or put on any proof of his own. The Court then entered judgment for the McKinneys based on the proof, and assessed damages.

Kimery argues that the court proceeding was not appropriate under Tenn. R. Civ. P. 55, which addresses default judgments. However, as we note, the Court awarded Judgment to the McKinneys based upon the proof they presented at trial, and did not rely on Kimery's failure to file an answer to the counter-claim as the basis for the Judgment. This case is similar to the case of *Barber & McMurry, Inc.*, wherein counsel for the defendant failed to appear for trial and the Court allowed plaintiff to present evidence in defendant's absence, and then entered judgment for the plaintiff.

Regarding the propriety of such action, we held that "the judgment entered here is not a default judgment within the requirements of T.R.C.P., Rule 55.01. The case was regularly docketed for trial on the date the judgment was entered with notice in excess of 90 days to all parties. . . . The record establishes the judgment was based on evidence presented at trial." *Id*. at 471. This Court then affirmed that judgment. *Id*.; *see also Ramsey v. Ramsey*, 2000 Tenn. App. LEXIS 601 (Tenn. Ct. App. Sept. 6, 2000).

The Supreme Court has previously stated, "In this state, the theory of punitive damages is not to compensate an injured plaintiff for personal injury or property damage, but to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him." *Huckeby v. Spangler*, 563 S.W.2d 555, 558 (Tenn. 1978). "In Tennessee, therefore, a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

The Supreme Court in *Hodges* set forth the elements required to be proved to establish a basis for punitive damages. *Id.* 901-02. The evidence does not contain all the necessary elements to form a basis to award punitive damages, e.g., the financial affairs, conditions and net worth of counter-defendant was not shown. Moreover, the Supreme Court has further held that in non-jury cases the trial court must make sufficient findings of fact and conclusions of law to facilitate appellate review of the punitive damages award. *Culbreath v. First Tennessee Bank Nat. Ass'n*, 44 S.W.3d 518 (Tenn. 2001). The Trial Court did not comply with all of these requirements in assessing punitive damages. Accordingly, we reverse the award of punitive damages.

Finally, Kimery argues that the award of attorney's fees was inappropriate, because the Court asked the McKinneys' attorney to submit a detailed billing, and Kimery claims he was not given the opportunity to review the same. Kimery does not dispute that attorney's fees could be awarded pursuant to Tenn. Code Ann. §4-21-701, or that the Court had the discretion to determine the proper amount of same, but rather argues that it was improper for the amount to be set without Kimery being given the opportunity to review the request and respond.

The McKinneys claim that a detailed billing was furnished to the Court, but was not designated to be part of this record by Kimery.

The Court's Order does not refer to the billing statements specifically, but apparently he based the fee on the information furnished. Without documentation in the record, the amount of the fee cannot be reviewed, and since Kimery raised the issue, it was his responsibility to see that the appropriate documents were designated to be included in the record.

For the foregoing reasons, we affirm the Judgment of the Trial Court on all issues, except punitive damages, and that award is reversed. The cost of the appeal is assessed 3/4 to Kimery and 1/4 to the McKinneys.

_____
HERSCHEL PICKENS FRANKS, J.